**David P. TAYLOR, Plaintiff,**

v.

**ARKANSAS LOUISIANA GAS COMPANY, Arkansas Louisiana Exploration Company, Arkla, Inc., Arkla Exploration Company, Arkansas Western Gas Company, Seeco, Inc., J.T. Stephens d/b/a Stephens Production Company and Stephens Production Company, Defendants.**

**Civ. No. 83–2310.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

March 19, 1985.

James F. Dickson, Fayetteville, Ark., for plaintiff.

Jerry Lee Canfield, Daily, West, Core, Coffman & Canfield, Fort Smith, Ark., for Arkansas Louisiana Gas Co., Arkansas Louisiana Exploration Co., Arkla, Inc., and Arkla Exploration Co.

Kathleen Burke and E.J. Ball, Ball, Mourton & Adams, Fayetteville, Ark., for Arkansas Western Gas Co., and Seeco, Inc.

Spence A. Leamons, Fort Smith, Ark., and E.J. Ball, Ball, Mourton & Adams, Fayetteville, Ark., for J.T. Stephens and Stephens Production Co.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

The plaintiff, David P. Taylor, a resident and citizen of the State of New York, is the owner and successor in title and interest to 31 oil and gas leases located in Franklin County, Arkansas. The defendants are successors in title and interest to all mineral rights in the leases in question. There are three groups of defendants involved. The first group—Arkla—is made up of Arkansas Louisiana Gas Company, Arkansas Louisiana Exploration Company, Arkla, Inc., and Arkla Exploration Company. The second group—Stephens—consists of J.T. Stephens d/b/a Stephens Production Company and Stephens Production Company. And the third group—AWG—consists of

Arkansas Western Gas Company and Seeco, Inc.

The plaintiff is the lessor and the defendants are the lessees to 31 oil and gas leases. Each lease contains one of three types of royalty clauses defining the royalty due the plaintiff for the sale of gas produced under the lease. There are "market price" royalty clauses, "fixed rate" royalty clauses, and "proceeds" royalty clauses. The plaintiff brought this suit pursuant to 28 U.S.C. § 1332 alleging underpayment by the defendants of the royalties owed him pursuant to the oil and gas leases. The parties stipulated as to the facts involved and submitted the case to the court on cross motions for summary judgment. It is the duty of this court to interpret the royalty clauses and determine whether the plaintiff received from the defendants the correct royalty as agreed upon in the leases executed by the parties.

## I. Market Price Royalty Clauses.

On October 10, 1948, Stephens and Arkla entered into a joint operating agreement pertaining to the Cecil Gas Field in Sebastian and Franklin Counties, Arkansas. This field is the situs of ten natural gas wells owned by Stephens and Arkla and operated by Arkla pursuant to the 1948 agreement. Stephens and Arkla share in the burden of each of these wells regardless of the lessee named in the oil and gas leases. They share equally the cost of royalties of seven wells and on a pro rata share for three wells. Stephens also owns two other wells in the Cecil Field, but it owns them wholly, without any co-ownership by Arkla.

In March and June of 1973, and November of 1974, Stephens and Arkla executed long-term gas purchase contracts pursuant to which Stephens sold to Arkla all of its production from its working interest in all twelve wells mentioned above. These contracts replaced and superseded the earlier 1948 contract. These gas purchase contracts were in existence, within the meaning of NGPA, 15 U.S.C. § 3301(13), on November 8, 1978, and the sale per thousand cubic feet (MCF) for the production under those contracts was the maximum lawful price for which the production and working interest in those wells could be sold under the NGPA, 15 U.S.C. § 3315(b)(1), after November 8, 1978.

Four of the ten wells owned by Stephens and Arkla jointly, as well as two wells wholly owned by Stephens, are situated on property leased from the plaintiff by leases which contain the following royalty clause:

> The Lessee shall pay Lessor as royalty for gas the equal one-eighth (⅛) of the value of such gas calculated at the rate of *prevailing market price at well* per thousand cubic feet while the same is being sold or used off the premises ... (emphasis added).

For the purpose of computing and paying to the plaintiff the royalty due under these leases, Stephens equated the "prevailing market price" with the price recited in the long-term gas sale contract pursuant to which Stephens sold its gas production to Arkla.

Arkla entered the gas produced on premises it leased from the plaintiff into its pipeline for sale directly to consumers and did not sell it on the open market by long-term gas sale contracts or other means. However, in determining the prevailing market price for purposes of computing the royalty owed to the plaintiff for the gas Arkla sold directly to its consumers, Arkla utilized the gas price recited in the long-term gas sale contract by which Stephens sold gas to Arkla. Arkla's decision to use that contract price as the prevailing market price was not made arbitrarily. A royalty committee, established within the Arkla System with the designated purpose of determining the market value of gas, made the decision to utilize the contract price recited in the Stephens-Arkla gas sale contract as the prevailing market price for the purposes of royalty computation. The committee carefully considered many factors in reaching its conclusion. These factors included: the depth of the well, the volume of gas anticipated from the well, whether the seller is dedicating the gas

from one well or many wells, quality of the gas, availability of pipelines, anticipated cost of installing pipelines, vintage of the gas, competition date, current market conditions, prior experience with the seller, any prices dictated by federal regulations, etc. Although Arkla has asserted that all those factors were considered, the committee's decision that the prices established by the sales contracts were the best evidence of the prevailing market price of the gas from the wells was primarily due to the arm's length-good faith nature of the Stephens' gas purchase contracts with Arkla and the fact that both parties own essentially equal interests in the gas subject to such contracts.

The plaintiff asserts that the prices recited in the Arkla-Stephens gas sale contracts were not equal to the prevailing market rate, and, therefore, the royalty payments based on those prices did not satisfy the lease obligations to pay royalties computed at the prevailing market price. Thus, the issue is: whether the lease obligations to pay royalties computed at the prevailing market price were satisfied by the payment of royalties computed at the prices recited in the long-term gas sale contracts executed by Stephens and Arkla.

The use of imprecise royalty language such as prevailing market price at the well in lease contracts leads to confusion and ambiguous interpretations by the parties. This ambiguity is reflected in the split of opinion among various states concerning the judicial interpretation of market value clauses.

Some states such as Texas and Kansas hold that the market price is "the price that a willing buyer would pay to a willing seller in a free market at the time of production." *See Lightcap v. Mobile Oil Corp.*, 221 Kan. 448, 562 P.2d 1 (1977). Those states have also noted that the contract price for which the gas is sold is not necessarily equivalent to the prevailing market price. *See Texas Oil and Gas v. Vela*, 429 S.W.2d 866 (Tex.1968). The Texas court further clarified its interpretation of market price clauses by holding that the

language "at the well" limits the time for computing the prevailing market price to the time when the gas is delivered and not the time when the long-term gas sale contracts are executed. *See Exxon Corporation v. Middleton*, 613 S.W.2d 240 (Tex. 1981).

On the other hand, other states, including Arkansas, follow a different rule. In fact, the Arkansas Supreme Court in *Hillard v. Stephens*, 276 Ark. 545, 637 S.W.2d 581 (1982), considered and specifically rejected the Texas-Kansas interpretation and developed its own comprehensive interpretation.

The first issue to be decided here is whether the "contract price" that Stephens receives according to the gas purchase contract with Ark-La is the "prevailing market price at the well" under the five leases. We hold that it is. The gas lease constitutes a present sale of all of the gas in place at the time such lease is executed; and as the gas leaves the well head, the entire ownership thereof is in the lessee, none being reserved in the lessor. Once the lessee-producer drills a well resulting in the commercial production of natural gas on the leased premises, the lessee-producer has the immediate duty to market the gas. In order to market such gas effectively, it is the custom in the industry and is usually necessary for the lessee-producer to sell the gas under a long-term gas purchase contract. 276 Ark. at 550, 637 S.W.2d 581.

We recognize that the Texas courts have taken a different approach, *see Texas Oil and Gas v. Vela*, 429 S.W.2d 866 (Tex.1968), and other Texas cases that followed it. 276 Ark. at 551.

We believe that this interpretation of "prevailing market price at the well" is ... the only interpretation that operates fairly for the producer. It is not unfair to the [lessor]. As long as the gas purchase contracts were reasonable when entered into, and as long as the law recognizes long-term gas purchase contracts as binding in the face of escalating

prices, the law should not penalize [the lessee-producer] who was forced into the gas purchase contracts in a large measure by its duty to the [lessor] to market the gas efficiently and effectively. 276 Ark. at 552, 637 S.W.2d 581.

These excerpts from the *Hillard* opinion clearly show that Arkansas law regarding the prevailing market price issue involved in the case presently at bar is established. Such authority is binding upon this court.

This court is bound under the *Erie* doctrine, in diversity cases such as this one, to follow the Arkansas interpretation unless the Arkansas Supreme Court would follow another interpretation at this time if provided the opportunity to do so. *See Atlas Aluminum Corp. v. Borden Chemical Corp.*, 233 F.Supp. 53 (D.C.Pa.1964). The court does not believe the Arkansas court would change the *Hillard* interpretation at this time. The *Hillard* opinion is only three years old and the court has not indicated any retraction from its strong rejection of the Texas-Kansas interpretation. In fact, in a recent Arkansas Supreme Court case, *Diamond Shamrock Corp. v. Harris*, 284 Ark. 270, 681 S.W.2d 317 (1984), involving facts distinguishable from, but not completely dissimilar to, these, the court had an opportunity to modify the *Hillard* rationale, but instead decided the case on another basis without mentioning *Hillard*.

In the *Diamond Shamrock* case, Diamond Shamrock Corp. executed a long-term gas purchase contract with Arkla Inc. in 1971 obligating Diamond Shamrock to sell all of its gas production from certain counties to Arkla Inc. in accordance with an agreed pricing standard. Later, in 1974, the plaintiff, Harris, purchased property in one of those counties. However, Harris had no actual knowledge of the Diamond-Arkla contract. In 1977 Harris executed an oil and gas lease with Diamond Shamrock obligating Diamond to pay royalty to Harris computed according to the market value of gas at the well.

On appeal, Diamond Shamrock contended that the market value of the gas was established by the earlier Diamond-Arkla contract which Harris was not a party to and had no knowledge of.

The Arkansas Supreme Court held that if Diamond Shamrock was relying on the pricing standard found in the 1971 gas purchase agreement with Arkla Inc., then this price should be clearly referred to in the lease agreement royalty clause. To hold otherwise would place Harris in the unfair position of being compensated for the gas produced from his property by a contract to which he was not a party nor had any notice of when negotiating his lease with Diamond Shamrock.

The supreme court affirmed the holding of the trial court that the best evidence of the market value is the price paid other participants in the well.

Because *Diamond Shamrock* has little, if any, effect on *Hillard,* this court is confident that *Hillard* is still good and binding authority in Arkansas, and in this diversity case, this court is bound by *Erie* to follow it.

In keeping with *Hillard,* a court presented with facts similar to those now at bar must ascertain (1) whether the lessee/producer attempted to market the gas immediately in an effective manner and (2) whether the contracts were reasonable and executed in good faith and at arm's length when entered into.

■ There is no contention that Stephens failed to expeditiously market the gas and it is well settled by *Hillard* that sales pursuant to long-term gas purchase contracts are effective methods of marketing gas. The only remaining question is whether the contract was reasonable and executed at arm's length and in good faith. The plaintiff bears the burden of invalidating the long-term contracts by proving them to be unreasonable or by showing that the negotiations were not conducted at arm's length or in good faith.

■ The plaintiff asserts that the gas purchase contracts executed by AWG and Seeco and the fair field price established by the Arkansas Public Service Commission

(APSC) both serve as evidence that the price per MCF received by Stephens from Arkla pursuant to the long-term contracts was below the prevailing market price. For the following reasons, the court finds this argument unpersuasive.

First, the fair field price was established by the APSC as a utility rate regulation; it was never designed to be exemplary of the prevailing market price for gas at the well. Therefore, it wields little persuasive weight as evidence of the market price.

Second, the gas purchase contracts executed by AWG and Seeco do not conclusively prove that the royalties paid pursuant to the Stephens-Arkla contracts were unreasonable. The AWG contracts were executed at a later date and the royalty computed under these contracts ranged from $0.0027 per MCF to $0.0735 per MCF. That royalty range does not vary broadly from the royalties computed under the Stephens-Arkla contracts.

Third, the gas purchase contracts under which Stephens sold all of the production from its working interest in the wells situated on the leased property to Arkla were in existence on November 8, 1978, within the meaning of NGPA, 15 U.S.C. § 3301(13), and the sale price per MCF for that production was the maximum lawful price for which the production from those wells could be sold under the NGPA, 15 U.S.C. § 3315(b)(1) after November 8, 1978.

The court is not convinced that Arkla and Stephens, by paying royalties computed at the sale price recited in the Arkla-Stephens long-term gas purchase contracts, failed to satisfy the respective obligations imposed upon them by the lease contracts, which were to pay royalties computed on the prevailing market price. The court also finds that the contracts were reasonable when executed. Stephens efficiently and effectively marketed the gas produced on the leased premises and did so in good faith and at arm's length with Arkla.

■ The plaintiff has failed to prove that the gas contracts were not reasonable or were not executed in good faith or at arm's length. The court finds that the prices recited in the Arkla-Stephens contracts were at least equal to the prevailing market prices at the well at the time of the contracts' execution. Accordingly, the lessor, Taylor, is not entitled to any additional royalties from Stephens or Arkla under the market price leases.

## II. Fixed Price Royalty Clauses.

All three groups of defendants, Arkla, AWG and Stephens, executed some oil and gas leases with the plaintiff which provided for a fixed rate royalty per MCF. Although the respective royalty rates recited in the leases vary from three cents per MCF to seven cents per MCF, the clauses all read basically as follows:

> "The Lessee shall pay the Lessor, as royalty ... for gas from each well where gas is found the equal one-eighth (⅛) of such calculated at the rate of four cents per thousand cubic feet, corrected to two pounds above atmospheric pressure while the same is being sold or used off the premises ..." (Stipulated Exhibits No. D (9)–(11), (20)–(25), and (27)–(29).

The plaintiff contends that the lessees violated Ark.Stat.Ann. § 53–511 *et seq.* and § 53–514 thereby entitling the plaintiff to cancellation of all the fixed price leases, forfeiture of said leases, and treble damages for the value of the amount of gas wrongfully taken from the royalty interest. Ark.Stat.Ann. § 53–511 reads:

> **Purchasers to pay same price for royalty gas as operator or lessee is paid for his interest.**—It shall be the duty of both the lessee, or his assignee, and any pipe line company, corporation or individual contracting for the purchase of oil or gas under any oil, gas or mineral lease to protect the royalty or lessors interest by paying to such lessor or his assignees the same price including such premiums, steaming charges, and bonuses of whatsoever name, for royalty oil or gas that is paid such operator or lessee under such lease for the working interest thereunder.

Ark.Stat.Ann. § 53–514 reads:

**Forfeiture of lease upon lessee receiving more than share from sale—Purchaser to pay treble value.**—Any leaseholder or operator who contracts for the sale of gas or oil to any pipe line company or other purchaser, under and by virtue of the terms of which the lessee receives a greater amount than the royalty owners in proportion to interest therein, or receives a bonus, or by any other means conspires with a purchaser to receive from the sale of said oil and gas more than his just proportionate share therefrom, shall forfeit his rights in and to said leasehold premises. And any pipe line company or other purchaser of oil and gas who contracts with any lessee as above set out to the injury of the royalty owners shall forfeit to the said royalty owners treble value of the amount of oil or gas runs thus wrongfully taken from the royalty interest.

■ Again the Arkansas Supreme Court has ruled on this precise issue. In fact, the ruling was declared in the same case which propounded the market rate interpretation, *Hillard v. Stephens, supra.* As in this case the plaintiffs in *Hillard* contended that they "were entitled to have the royalty payments due them under [the fixed price] leases computed on the 'proceeds' received by Stephens under the long-term gas purchase contracts ... because § 511 converted" these leases from fixed price leases into proceeds leases. *See* 276 Ark. at 553, 637 S.W.2d 581. In addressing this contention, the court stated:

> If, ... § 53–511 converts all "fixed price" gas leases into "proceeds" leases, it follows that fixed prices favorable to a lessor or higher "fixed price" leases would be converted into "proceeds" leases. That is not the intent of the statute. Nor is it to prohibit fixed price contracts for oil and gas leases. Absent indications previously referenced, it is clear that §§ 53–511 and 53–514 are inapplicable in this case and could not under the circumstances cause Stephens to forfeit the leases to the Hillards.

The court went on to hold that payment of the fixed price royalty discharges the lessee's obligation to pay royalty under the leases. Thus, it is established law in Arkansas that fixed price royalty clauses in gas leases are valid and are neither prohibited nor converted into proceeds clauses by Ark.Stat.Ann. §§ 53–511 or 53–514.

Furthermore, we do not believe that the Arkansas Supreme Court would follow any contrary opinion at this time. Thus, for the above stated reasons, the court holds that the royalty payments made pursuant to the fixed price royalty clauses by the defendants, Arkla, AWG, and Stephens, discharged their respective obligations to pay royalty under the leases.

The court also holds that Stephens' and Seeco's counterclaims against Taylor fail because there is no proof that payments made by Stephens and Seeco to Taylor in excess of the fixed price recited in the fixed price leases were made due to mutual mistake of fact on the part of both Stephens and Taylor or Seeco and Taylor. This holding is also supported by *Hillard. See* 276 Ark. 554, 637 S.W.2d 581.

## III. Proceeds Royalty Clauses.

Arkansas Western Gas Company (AWG) is an Arkansas business corporation operating as a natural gas distribution utility. Prior to October 1, 1979, AWG had executed eleven oil and gas leases with the plaintiff. The gas produced from the wells located on leased premises was entered directly into AWG's system and sold to consumers at the fair field price of $1.48 per MCF as established by the Arkansas Public Service Commission. AWG computed and paid to the plaintiff royalty monthly based on that amount.

Seeco is also an Arkansas business corporation, and engages in oil and gas exploration, development, production, and marketing in Arkansas. On September 17, 1977, AWG and Seeco executed a contract which took effect on October 1, 1979. Under the terms of the contract AWG assigned all its oil and gas leases and the natural gas production thereon, including

those to which the plaintiff was a party, to Seeco which in turn sold the production from the wells on the leased premises to AWG by long-term gas purchase contracts and spot sales. In addition, Seeco later sold the production from one well to The Natural Gas Pipeline of America by a long-term gas purchase contract. The leases to which the plaintiff and Seeco and/or AWG are parties utilize one of three royalty clauses. Three of the leases contain "fixed rate" royalty clauses and seven leases contain "proceeds" royalty clauses and one of the leases contains a "gross proceeds at the prevailing market rate" royalty clause.

This court has held, as stated earlier in the opinion, that fixed rate royalty clauses are valid and enforceable and that payment pursuant to such clauses satisfies the lease obligation imposed on the lessee to pay royalty. That holding is equally applicable in regard to Seeco and AWG. In that same regard, any overpayment by Seeco against AWG is not recoverable because no evidence of mutual mistake of fact was presented. Furthermore, no timely counterclaim for such recovery was filed.

■ Royalty clauses which award the lessor a portion of the proceeds received from the sale of the gas produced from the leased premises are also valid. The proceeds clause utilized in seven of the leases involved in this case reads as follows: "Lessee shall pay Lessor one-eighth of the proceeds received by Lessee at the well for all gas ... produced from the leased premises and sold by Lessee." This royalty clause was binding on AWG prior to the October 1, 1979, assignment of the leases to Seeco and thereafter it was binding on Seeco.

■ Prior to October 1, 1979, AWG computed and paid to the plaintiff its royalty based on the fair field price established by the Arkansas Public Service Commission at $1.48 per MCF. The royalty terms calling for a royalty equal to one-eighth of the proceeds are clear and unambiguous. Such lease contracts are valid, but there is at least an implied obligation imposed upon the lessee to make a good faith effort to

efficiently and effectively market gas produced on the leased premises. The court finds that AWG efficiently and effectively marketed the gas and that AWG's royalty payments, computed on the fair field price of $1.48 per MCF, discharged the obligation to pay royalty which was imposed upon AWG by the lease.

■ After October 1, 1979, when the lease assignments from AWG to Seeco took effect, Seeco marketed the gas by selling it to AWG pursuant to long-term gas purchase contracts. The sale price recited in the contracts equaled the maximum ceiling price allowed by The Natural Gas Policy Act which became effective November 8, 1978. See 15 U.S.C. § 3301(ff). This contract also provided for price adjustment to maintain the price at the maximum ceiling price allowed by the NGPA. This contract was approved by the APSC and royalty, computed at the contract price, was paid to plaintiff monthly. In addition, the gas produced from two wells which initially began production on August 1, 1980, and January 1, 1982, was sold by spot sales to AWG at the same price as recited in the long-term gas purchase contract and royalty was computed on that price and paid to the plaintiff monthly. On February 22, 1983, the gas production from these two wells was sold by Seeco to The Natural Gas Pipeline Company of America which had recently completed a pipeline in the vicinity of the wells. The gas was sold by a long-term gas purchase contract at the best price available. Royalty based on that price has been paid to the plaintiff monthly. The court finds that Seeco discharged its lease obligation by efficiently and effectively marketing the gas and paying the royalty due to the plaintiff under the lease. There is no question that the gas purchase contracts were made in good faith and at arm's length.

■ Only one royalty clause remains unaddressed by this court. It reads as follows: "To pay Lessor ... one-eighth of the gross proceeds at the prevailing market rate, for all gas used off the premises." It

is clear that this clause is a mixture of the "market rate" type clause and the "proceeds" type clause. The gas produced on the leased premises subject to the above royalty clause was marketed by AWG and Seeco just as the gas produced under the proceeds leases discussed earlier was marketed. The court finds that both AWG and Seeco effectively and efficiently marketed this gas and paid royalty to the plaintiff based on the proceeds received from the sale of the gas, thereby discharging the obligation imposed upon them by the lease. The court can make this finding without comprehensively interpreting the ambiguous clause because it also finds that the price received for the gas was at least equal to the prevailing market rate. Thus, in this case, a computation of the royalty based on the proceeds of the sale satisfies the lease obligation whether it be to pay royalty based on the prevailing market rate or the proceeds received.

For the above stated reasons, the court finds that the plaintiff is entitled to no recovery from AWG, Seeco, Arkla, or Stephens. The court also finds that the counterclaims asserted against the plaintiff fail for lack of evidence proving mutual mistake of fact and for lack of timely filing in the case of AWG and Seeco. The court finds it unnecessary to rule on the entitlement of the plaintiff to an accounting by AWG and Seeco because one was provided by each thereby rendering the question moot.

A separate judgment in accordance with this memorandum opinion will be concurrently entered.