David P. TAYLOR, individually and as Administrator of the Estate of Jeta Taylor, Appellant,

v.

ARKANSAS LOUISIANA GAS COMPANY, Arkansas Louisiana Exploration Company, Arkla, Inc., Arkla Exploration Company, Arkansas Western Gas Company, Seeco, Inc., J.T. Stephens d/b/a/ Stephens Production Company and Stephens Production Company, Appellees.

No. 85-1447.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1986.

Decided June 6, 1986.

Rehearing Denied July 1, 1986.

Priscilla Karen Pope, Fayetteville, Ark., for appellant.

E.J. Ball, Fayetteville, Ark., for Arkansas Western Gas Co., Seeco and Stephens.

Jerry Lee Canfield, Ft. Smith, Ark., for Arkla, Inc.

Before LAY, Chief Judge, and ROSS and WOLLMAN, Circuit Judges.

LAY, Chief Judge.

David P. Taylor appeals from the district court's [1] order granting summary judgment in favor of the defendant gas producers, whom Taylor alleges underpaid the royalties due him under certain oil and gas leases. We affirm the judgment of the district court.

The essential facts were stipulated to by the parties. Taylor is a citizen of New York and the owner of and successor in title and interest to certain oil and gas leases located in Franklin County, Arkansas. Defendants are three groups of gas producers who are the successors in title and interest to all mineral rights in the leases. Taylor brought suit against the lessee-producers, alleging that under the terms of the leases' royalty clauses he is entitled to additional royalty payments. On cross-motions for summary judgment, the district court granted summary judgment in favor of the defendant lessees and dismissed Taylor's complaint with prejudice.[2] This appeal followed.

**Market Price Royalty Clauses**

Arkansas Louisiana Gas Company, Arkansas Louisiana Exploration Company,

---

1. The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas, presiding.

2. The district court's memorandum opinion and order are reproduced at *Taylor v. Arkansas Louisiana Gas Co.*, 604 F.Supp. 779 (W.D. Ark.1985)

Arkla Exploration Company, and Arkla, Inc. ("Arkla") and J.T. Stephens d/b/a Stephens Production Company and Stephens Production Company ("Stephens") jointly own four wells and Stephens solely owns two additional wells on land leased from Taylor. These leases contain a royalty provision which states: "The Lessee shall pay Lessor as royalty for gas the equal [of] one-eighth (⅛) of the value of such gas calculated at the rate of the *prevailing market price at [the] well* per thousand cubic feet while the same is being sold or used off the premises" (emphasis added). In 1973 and 1974, Arkla and Stephens entered into long-term gas purchase contracts in which Stephens agreed to sell all of its working interest in the production of these six wells to Arkla. In computing the royalties due Taylor under these leases, both Stephens and Arkla used as the measure of the "prevailing market price at the well" the price Stephens received under the long-term gas sales contract. Taylor contends that the price recited in the long-term gas sales contract between Arkla and Stephens is not an accurate measure of prevailing market price at the well as is meant by the lease terms, and that it is unfair to calculate his royalties based on a price established in a contract to which he was not a party.

■ In a diversity case, decisions of the state's highest court are to be accepted as defining state law unless the state court "has later given clear and persuasive indication that its pronouncement will be modified, limited, or restricted." *Gillette Dairy, Inc. v. Mallard Manufacturing Corp.*, 707 F.2d 351, 354 (8th Cir. 1983) (quoting *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 236, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)). In *Hillard v. Stephens*, 276 Ark. 545, 637 S.W.2d 581 (Ark.1982), the Arkansas Supreme Court discussed the conflicting authority as to the correct method of calculat-

ing oil and gas lease royalties under market price clauses. The Arkansas Court evaluated in particular the contrasting approaches of *Texas Oil & Gas Corp. v. Vela*, 429 S.W.2d 866 (Tex.1968) and *Tara Petroleum Corp. v. Hughey*, 630 P.2d 1269 (Okla.1981), and adopted the rule articulated in *Tara*, which states that

> when a producer's lease calls for a royalty on gas based on the market price at the well and the producer enters into an arm's-length, good faith gas purchase contract with the best price and term available to the producer at the time, that price is the "market price" and will discharge the producer's gas royalty obligation.

*Hillard*, 637 S.W.2d at 584, (quoting *Tara*, 630 P.2d at 1273).

■ In applying this rule, the Arkansas Court placed on the lessor the burden to prove that the gas purchase contract entered into by the lessee-producer, who is bound to sell the gas produced at the price fixed by the contract, was unfair or unreasonable at the time it was entered into. *Hillard*, 637 S.W.2d at 585. The stipulated testimony of the Stephens employee who negotiated the gas sales contracts states that the price recited in the gas sales contract between Arkla and Stephens was at the highest rate and with the best terms available at the time.[3] The district court found that Taylor had failed to carry his burden to show that the gas sales contracts between Stephens and Arkla were not reasonable and not made at arm's-length and in good faith.

On appeal, Taylor urges that a later decision of the Arkansas Supreme Court, *Diamond Shamrock Corp. v. Harris*, 284 Ark. 270, 681 S.W.2d 317 (Ark.1984), should now govern our decision. The district court found that the reasoning in *Diamond Shamrock*[4] has little effect on the Arkan-

---

**3.** The stipulated facts also show that Jeta Taylor, David Taylor's father and his predecessor in title and interest in these leases, was Stephens' attorney for many years and performed services for

Stephens in the acquisition and drafting of oil and gas leases.

**4.** In *Diamond Shamrock*, the lessee-producer entered into a long-term gas sales contract be-

sas Court's market price royalty clause analysis in *Hillard* and that *Hillard* remains binding authority on this issue. We conclude that the district court's finding that the long-term gas sales contracts between Arkla and Stephens were not unfair or unreasonable is not clearly erroneous. Under the stipulated facts and the applicable Arkansas law, we find that the district court did not err in its grant of summary judgment in favor of Stephens and Arkla.

Taylor argues that even if *Hillard* is controlling as to Stephens' royalty obligations under the market price clauses, the same measure of prevailing market price should not be made applicable to Arkla's royalty calculations for its undivided interest in the same leases. Taylor argues that Arkla is a buyer under the long-term gas purchase contracts and not a seller like Stephens, and that Arkla has entered into no other long-term contracts which obligate it to sell at a fixed price. Noting that Arkla as a producer on its leases enters all gas produced into intrastate pipelines for direct sale to consumers, Taylor argues that it is unfair to tie his royalty under the Arkla leases to the price to which only Stephens is bound as seller under the long-term gas contracts.

■ It is true that the Arkansas Supreme Court's reasoning in *Hillard* is not directly applicable to leases where the producer has not executed a long-term contract to sell to a buyer under a fixed price. The *Hillard* court recognized that past industry custom and necessity compelled lessees to enter into long-term contracts to fulfill their immediate obligation to the lessor to effectively and efficiently market the gas produced. *Hillard*, 637 S.W.2d at 583–84. The rationale underlying the *Hillard* decision is that it would be inequitable to a lessee, who receives a fixed price at the

well site under a long-term gas purchase contract, to then pay royalties to a lessor based on a fluctuating market price which could result in the lessor receiving a larger proportion of the lessee-producer's fixed revenue. *Id.* at 584. We agree that the reasoning of *Hillard* is based on a recognized industry custom wherein the lessee-producers are sellers under a long-term contract. However, we are constrained here to apply *Hillard's* holding that the prevailing market price at the well is measured by the best price and terms available to producers under an arm's-length, good faith gas purchase contract to Arkla as well as to Stephens for market price royalty calculation purposes.

We think this result follows for several reasons. First and foremost, the Arkansas Supreme Court has provided in *Hillard* the legal standard applicable to measure prevailing market price for comparable leases. Second, the leases in issue were executed with Arkla and Stephens as co-lessees and recognize that each lessee owns an undivided half-interest in the gas sold at the well site. There is nothing in the record which demonstrates that it was contemplated at the time the leases were executed that Stephens and Arkla would pay different royalties on the same production under the same terms set out in the same leases. *See Hillard*, 637 S.W.2d at 584, *quoting Tara*, 630 P.2d at 1273 (original intent of lessor as to lessee-producer's future obligations under the lease relevant in determining prevailing market price for royalty purposes). Third, we deem it important, as recognized in *Hillard*, that "[t]he gas lease constitutes a present sale of all of the gas in place at the time such lease is executed; and as the gas leaves the well head, the entire ownership thereof is in the lessee, none being reserved in the lessor." *Hillard*, 637 S.W.2d at 583. This recognition

fore it entered into the lease. The lessor purchased the leased property and executed the lease without actual notice of that long-term gas contract. Finding that the lessee had a duty to advise the lessor of the long-term gas contract's existence, the Arkansas Supreme Court affirmed the district court's refusal to apply the long-term gas contract price as the prevailing market price

for royalty calculation purposes. *See Diamond Shamrock*, 681 S.W.2d at 320–321. In the present case, as in *Hillard*, the long-term gas purchase contract was entered into subsequent to the leases' execution. Moreover, no notice questions are present here like those on which the court in *Diamond Shamrock* focused in deciding that case.

makes it immaterial for determination of prevailing market price how a lessee may ultimately dispose of the gas it produces. Fourth, we deem it highly relevant in the present case that the district court found that Taylor has failed to sustain his burden to show that the contract price was not a fair price or that it was not a product of good faith, arm's-length negotiations. In particular, we note that the district court rejected Taylor's submission of the "fair field price" as competent proof of prevailing market price for royalty calculation purposes.[5]

In conclusion, we are obligated to follow Arkansas law as set forth in *Hillard* for the determination of a reasonable measure of prevailing market price at the well for royalty purposes. Whether a different rule should apply to leases when the lessee-producer itself markets the gas produced directly to consumers is a matter best left to the Arkansas legislature or courts. For the time being and under the circumstances present here, we think it would be highly incongruous to apply different measures of royalty value to the same contract term within the same lease agreement based solely on the use of the gas by its producer.

We therefore affirm the district court's ruling that Taylor is not entitled to any additional royalties from Arkla or Stephens under the market price clauses.

### Fixed price royalty clauses

█ All three groups of lessee-producers —Arkla, Stephens, and Arkansas Western Gas Co. and Seeco, Inc. ("AWG")—executed leases with Taylor that contain fixed royalty clauses. Though the fixed amount on which royalty calculations are based differs under the individual leases, all the clauses provide that "[t]he Lessee shall pay Lessor, as royalty for gas from each well where gas is found, the equal [of] one-eighth (⅛) of the value of such calculated at the rate of [ ] cents per thousand cubic feet, * * * while the same is being sold or used off the premises." Taylor asserts that, contrary to the district court's finding, the fixed price royalty clauses violate Ark.Stat.Ann. § 53–511 (1971)[6] and are converted by that statute into proceeds clauses.[7]

This issue has also been resolved by the Arkansas Supreme Court in *Hillard v. Stephens,* and *Hillard* compels us to reject Taylor's argument here. *See Hillard,* 637 S.W.2d at 585–86. We agree with the district court's finding that because fixed rate royalty clauses are valid under *Hillard,* Taylor is not entitled to cancel the fixed price leases and obtain treble damages under Ark. Stat.Ann. § 53–514 (1971). *See id.* We also agree with the district court's conclusion that because it is highly unlikely that the Arkansas Supreme Court would follow or apply any contrary authority in resolving this issue at this time, the royalty payments made under the fixed price royalty clauses by Arkla, Stephens, and AWG discharged their royalty obligations under those leases. The district court correctly granted summary judgment in favor of all

---

5. We agree with the district court's refusal to accept Taylor's submission of the "fair field price" as competent proof of prevailing market price for royalty calculation purposes. Under Arkansas law, the fair field price is a measure of operating expense which natural gas utility companies are allowed by the Arkansas Public Service Commission, under its rate-setting powers, to charge customers. *See* Ark.Stat.Ann. § 73–1903 (1979). Because the fair field price serves an essentially regulatory function, it takes into account a variety of factors which are not relevant here and is not analogous to "prevailing market price at the well" for royalty computations as contemplated by the lease terms.

6. *Ark.Stat.Ann.* § 53–511 reads:
   It shall be the duty of both the lessee, or his assignee, and any pipe line company, corporation or individual contracting for the purchase of oil or gas under any oil, gas or mineral lease to protect the royalty or lessors [sic] interest by paying to such lessor or his assignees the same price including such premiums, steaming charges, and bonuses of whatsoever name, for royalty or gas that is paid such operator or lessee under such lease for the working interest thereunder.

7. Under a proceeds clause, the royalty due a lessor is calculated based on the actual proceeds received by the lessee-producer from the sale of gas produced on the leased premises.

194

three defendants on the fixed price royalty clauses.[8]

For the reasons stated above, the decision of the district court is affirmed.

8. Taylor also argued before the district court that he had been underpaid royalties due from AWG under leases containing proceeds clauses. The district court found in favor of AWG. Though Taylor's brief recites facts underlying this claim for additional royalties, he advanced no arguments here in support of his position either in the briefs or in oral argument. We therefore consider the issue waived on appeal and do not treat it further here.